CLINTON L. RIGGS ET AL. *vs.* EDWIN L. TURNBULL.

*Real Estate Broker Not Entitled to Commissions when Purchaser Fails*
*to Pay the Purchase Price.*

A real estate broker is not entitled to recover from a vendor commissions
for making a sale of property, if the purchaser procured by him fails or
refuses to pay the entire purchase money, although a binding contract
of sale was executed by the vendor and purchaser.

Defendant agreed to pay to plaintiff, a real estate broker, the usual com-
missions for effecting a sale of defendant's house, when the purchase

price should be paid. Plaintiff procured a purchaser between whom and the defendant a written contract was made providing for the sale of the property for the sum of $38,000, of which $500. was then paid and for the payment of the balance as follows, $4,500 in two months thereafter, at which time a deed should be executed, and a mortgage for the unpaid purchase money given, together with a bond conditioned for the erection of improvements. The purchaser paid only $3,000 and failed to give a bond for improvements. Afterwards he declared his inability to complete the contract and it was agreed between the vendor and purchaser that if the latter would give his promissory note for $2,000, the contract of sale would be cancelled. This was done but the note was not paid. In an action by the broker to recover commissions for effecting the sale. *Held*, that since the purchaser had failed to pay the purchase price according to the contract, the plaintiff is not entitled to recover.

*Decided February 28th, 1907.*

Appeal from the Court of Common Pleas (DOBLER, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*George R. Gaither* and *Leon E. Greenbaum* (with whom was *Alfred R. Riggs* on the brief), for the appellants.

A broker is not entitled to his commissions, unless the customer procured by him completes the sale by complying with the terms agreed upon, or is prevented from so complying by the fault of the vendor. This is the established law of Maryland, as set forth by an unbroken line of authorities. *Keener* v. *Harrod & Brooke*, 2 Md. 71; *Kimberley* v. *Henderson*, 29 Md. 515; *Richards* v. *Jackson*, 31 Md. 253; *McCullough* v. *Pierce*, 55 Md. 546; *Melvin* v. *Aldridge*, 81 Md. 658.

In *McGavock* v. *Woodlief*, 20 Howard, 225, which was the case upon which JUDGE ALVEY relied in the first decision in *Kimberly* v. *Henderson*, the Supreme Court decided a case exactly similar to the one at bar.

In *Kock* v. *Emerling*, 22 Howard, 69, the Supreme Court affirmed the decision in the case of *McGavock* v. *Woodlief*, but distinguished the decision from the facts in that case, on account of the fact that the refusal to perform was not the fault

of the purchaser but of the vendor, and that in such an instance the broker would be entitled to recover.

In *Kost* v. *Reilly*, 62 Conn. 67, the owner of a saloon business agreed to pay a broker a commission if he succeeded in effecting a sale thereof. The broker procured a purchaser who agreed to buy the saloon, and signed an agreement to that effect, the purchaser to pay $250 on the signing of the agreement, $750 before taking possession of the property and $50 monthly thereafter until the balance of $2,800 was paid. The purchaser paid the $250 at the time of signing the agreement, but soon afterward abandoned the purchase and never made the next payment under the agreement. The seller remained in possession and refused to return the $250 paid, and the broker brought suit against his principal for the full commissions. The Court in deciding the case stated, "It was not a sale *in presenti*, but a contract for a sale *in futuro*," and that as the purchaser never paid the $750 which was required to be paid before possession was to be delivered, that the plaintiff had not effected a sale, and was not entitled to his commission.

In *Cavender* v. *Waddingham*, 2 Mo. Appeals, 551, Waddingham (the purchaser) employed the plaintiffs to purchase a lot for him under certain terms, stipulating that the compensation of the latter was to be paid by the vendor and deducted from the purchase money going to the vendor, and in no event to be paid by him. Subsequently Waddingham violated the contract by refusing to take the property. It was held that the plaintiffs could recover, nevertheless, in such a case, from their principal, Waddingham (not from the vendor), for their proper fees for negotiating this sale, as the same had failed of completion by the default of their purchaser.

It must be noticed that this case is practically identical with the one at bar. Ehlen stipulated that he would not pay the commissions to his broker, who was negotiating the purchase for him, and that the commissions must be paid by the vendor. Nevertheless, he defaults in carrying out the contract, and it is his fault that the contract is not completed. Under such circumstances, under this anthority, the obligation is

upon him to pay proper fees to the broker who he has em-
ployed and who has failed to earn his commissions by the de-
fault of his principal, and not from the seller, who, only agreed
to pay commissions in the event of a sale being made, that is,
completed by the purchaser.

In *Zidler* v. *Walker*, 41 Mo. Appeals, 118, the Court de-
cided that an agent to sell real estate will not be allowed his
commissions until he produces a bidder who shall be ready,
willing and financially able to make the purchase absolutely
on the terms fixed by his principal, and that the party who
makes certain payments, on condition that they shall be for-
feited to the principal if said party fails to complete the pur-
chase, does not amount to a sale, but is a mere option, and
does not entitle the agent to recover his commissions. The
Court said: "The plaintiff in this case must fail, because he
offered no evidence of the financial ability of the purchaser se-
cured by him to make the purchase." See also *Greusil* v.
*Dean* (Iowa, 1896), 67 Northwestern Rep. 275; *Steinbaek* v.
*Montpelier Co.*, 37 Fed. Rep. 760; *Clark* v. *Thompson Co.*, 75
Conn. 163; *Block* v. *Regan*, 4 App. Cas. (D. C.) 283; *Sey-
mour* v. *St. Luke's Hospital*, 28 N. Y. App. 124; *Lige* v. *Mc-
Creery*, 60 N. Y. App. Div. 557; *Lassen* v. *Bayliss*, 125 Fed.
Rep. 744.

In the recent case of *Chapman* v. *Winson*, 91 Law Times
Rep. N. J. 17 (decided in July, 1904), the English law on this
subject is most clearly set forth. This case is practically iden-
tical with the case at bar.

As against this long line of decisions, based upon the prin-
ciple that it is the duty of the broker to not only furnish a
customer who will sign an agreement to purchase, but also
one who actually completes the sale, unless prevented from
doing so by the fault of the vendor, there are, it is admitted,
a number of decisions in other States which are based upon
the theory that a broker's only obligation is *to produce a pur-
chaser* who is willing to buy, and that the acceptance of the
customer by the principal is conclusive upon him and obligates
him to pay the broker his full commissions, regardless of the
fact of whether the purchaser is subsequently able to complete
the purchase or not.

The grounds upon which this line of decisions are based in other jurisdictions are stated in the case of *Roche* v. *Smith*, 176 Mass. 597, to be, *"that all the broker is employed for is to produce a customer who enters into a valid agreement of sale."* And the Court admits that, "if it turns out that the customer produced by the broker is not able to pay and does not pay for the land, *the broker has not earned his commission,* and it is only because the principal accepts the customer by entering into a valid contract with him, that it is held in cases like *Ward* v. *Cobb*, that the broker has earned his commissions." And then later in the same opinion, the Court bases the right to recover upon the theory that as there is a valid contract which can be enforced and damages recovered, and the principal is entitled to this remedy, that, "it is for these damages which are to be recovered that the compensation is paid."

It is submitted that the reasons for both of these grounds, upon which a recovery is allowed solely upon the production of an agreement to purchase, are fallacious. The doctrine that a mere acceptance of the purchaser estops the seller from disputing the ability or the willingness of the customer to comply with the contract is certainly not founded upon the general experience of mankind in ordinary business transactions between brokers and their principals. If such should be the law, it would be incumbent upon every purchaser before entering into a contract of sale to satisfy himself, not only of the financial ability of the proposed purchaser, but also as to his whims and peculiarities in completing his obligations. Such a rule is certainly not followed in such business transactions. How could the numberless sales which are daily made by brokers be effected if such precautions were necessary in order to protect a principal from liability to his broker? Then again, the doctrine that damages can be recovered as full compensation for the injury, and that therefore the commission should be paid to the principal for placing him in a position to sue on such a contract, covers the very case where the financial inability of the purchaser to comply is the cause of the breach of the contract. How

could there be an adequate remedy by a suit for damages or for specific performance against a man whose financial inability to comply with the contract in its inception, is the cause of the default? What would be the value of a judgment or decree against an insolvent or irresponsible purchaser? Such a doctrine would, as is said in *Melvin* v. *Aldridge, supra,* "only offer inducement to brokers to sell to irresponsible or reckless purchasers for the purpose of earning large commissions."

The services rendered by a broker should be measured by the completion of the agreement which was contemplated by the parties and not by the opportunity to engage in a law suit against the defaulting purchaser, who would probably be financially irresponsible. In other words, the compensation in this case should be the same as of all other agencies, based upon the actual benefits procured by the principal. Especially should this be the law in this State in real estate transactions, where the large commissions allowed to brokers, varying from two and a half to five per cent are justified only upon the theory of the numerous cases in which sales are not consummated as the result of the broker's efforts. Moreover, even in the States in which the rule as to brokers is given the broad construction of merely requiring an agreement to be entered into, the Courts in those same States have decided differently where the agency was in any sense of a different character from the general brokerage employment. *Washburn* v. *Bradley,* 169 Mass. 88; *Crasto* v. *White,* 52 Hun. 476; *Creveling* v. *Wood,* 95 Pa. 152.

*John Phelps* and *John H. Morgan,* for the appellee.

A broker, like any other agent, is entitled to his reward, if he accomplishes what he agreed to do, or in the absence of agreement, what the law implies as his duty. In this case, he was employed to sell certain property at a stipulated price upon agreed compensation. This he did. He sold the property. The contract itself constituted a sale *ipso facto.* It was not an executory agreement *to* purchase, nor an option, nor a defeasible, nor a conditional contract, but a present and actual "bargain and sale." The relation of vendor and vendee

immediately arose. The equitable title passed to the vendee, becoming the foundation of valuable rights, remedies and obligations. His interest was insurable, and he was responsible for loss or damage, the vendor holding the legal title merely as·trustee for the purchaser, who is regarded as the true owner of the land.

"The general rule is, that where the purchaser presented by the broker is accepted by his employer, and they enter into a valid, binding and enforcible contract of sale, the broker is entitled to his commissions, *whether or not the contract is actually carried into effect and the sale made.*" 23 *Am. & Eng. Encl. of Law,* 917; or, otherwise expressed: "If the purchaser produced by the broker is accepted by his employer, and a sale is actually made, the right of the broker to his commissions is *not affected by the failure of the purchaser to meet deferred payments of the purchase money. Ibid.,* p. 923; *Mechem on Agency,* sec. 966; *Clarke & Skyles on Agency,* sec. 773 (1905); *Lynch, Real Estate Brokers,* 52 (1876); *Cyc.,* vol. 19, p. 253.

This is the rule in all the following jurisdictions: Georgia, Illinois, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New York, Pennsylvania, South Dakota, Tennessee, Texas, Washington, Wisconsin, Colorado, Kentucky, California, and in fact wherever the point has been directly presented.

Appellee contends that, while the clear-cut issue has not been made in this State, the cases here are not in conflict with the universal rule. A contrary rule would be disastrous to the brokerage business, and establish the singular requirement, that a real estate agent, unlike all other agents, to receive his reward, must perform more than he undertook, and often, more than he is possibly able to accomplish, and make him the guarantor of his vendee's contract, in addition to fully performing his own to the satisfaction of his employer, as evidenced by the acceptance of his purchaser.

If the broker's commissions are not earned until the binding contract of sale is performed in full, the purchase money all

paid, and the legal title passed by deed, or in other words, if the broker must guarantee the purchaser's performance, he had better abandon his calling. If the principal extends the deferred payments over a long period of years, the broker must wait indefinitely for his pay, or else be burdened with collecting interminable petty installments on his commission. If the principals prefer to execute a bond of conveyance, the legal title may remain indefinitely in the vendor, with every practical security and the benefit of a completed sale, and yet the broker cannot collect his commissions, and must take the risk of forfeiture of the bond. When it is remembered that the broker has ordinarily no choice as to the terms of sale, such a rule would offer an easy and legalized method of depriving the broker of his just compensation, by one who has reaped the full benefit of his services. Such a rule cannot be practically or legally sound.

On the other hand, when it is remembered that the principal has command of every step—(1) may exact an express stipulation that commissions shall not be earned until the purchase price is paid (if the broker accepts the employment on these terms); (2) may reject the proposed purchaser if he is not satisfactory or responsible; (3) may satisfy himself by inquiring as to the purchaser's ability before accepting him; (4) may require such deposit on a sale as will fully indemnify him against his loss by non-performance (including his obligation to the broker); and finally, may arrange the details and terms of sale without consulting the broker—there can be no hardship, but only eminent fairness, in the rule that when the principal, in the absence of bad faith of the broker, accepts the purchaser produced by him, and executes a bargain and sale, he should not thereafter be permitted to allege the default of the vendee to defeat the broker's commissions, which are earned on the sale.

A few of the leading cases constantly cited and approved by many Courts, are: *Glentworth* v. *Luther*, 21 Barb. 145 (1855); *Cooke* v. *Fiske*, 12 Gray, 491 (1858); *Keyes* v. *Johnson*, 68 Pa. St. 42 (1871); *Rice* v. *Mayo*, 107 Mass. 550 (1871); *Simonson*

v. *Kissick*, 4 Daly, 143 (1871); *Love* v. *Miller*, 53 Ind. 294 (1876); *Coleman* v. *Meade*, 13 Bush (Ky.) 358 (1877); *Ward* v. *Cobb*, 148 Mass. 518 (1889); *Francis* v. *Baker*, 45 Minn. 83 (1890); *Wray* v. *Carpenter*, 16 Colo. 271 (1891); *Lunney* v. *Healey*, 44 L. R. A. 593 (1898), and notes (cited in 96 Md. 289); *Brady* v. *Foster*, 72 App. Div. (N. Y.) 416 (1902).

In *Francis* v. *Baker*, 45 Minn. 83 (1890), MITCHELL, J., says, after citing many of the leading cases on the above rule: "In fact the authorities are all one way on this question, the only apparent exception being *Richards* v. *Jackson*, 31 Md. 251, which, however, might have been decided upon the ground that the party presented had never entered into any enforcible contract of purchase, the written agreement containing a provision giving him the option to release himself of all liability by paying a sum of money as a forfeit. This was the ground upon which *Kimberly* v. *Henderson*, 29 Md. 512, was decided."

*Kimberly* v. *Henderson*, 29 Md. 512 (1868), is fully in line with the general rule, but constitutes a well recognized exception, viz: if the contract is not a binding enforcible one, but an *option*, then no sale has been made, and the broker has not performed his contract of employment. This is a necessary corollary to the rule, and recognized in many cases. 23 *Eng. & Am. Ency.*, p. 917; 19 *Cyc.*, 251, 253, N. 14.

*Kimberly* v. *Henderson*, also applies the same exception to case where the *broker* inserts a clause in the contract providing for liquidated damages or forfeit in case of non-compliance by vendee. This, of course, results in no sale on the vendee exercising an option to lose the forfeit. Such contract is neither binding nor enforcible, for which result, the broker is to blame.

*Richards* v. *Jackson*, 31 Md. 251 (1869), follows the Kimberly case and properly declined to overrule it. But in this case, it was not clear at whose instance the clause of forfeiture was inserted. While the forfeiture was not alluded to in the opinion, it is clear that it must have been relied on as the decisive point, from the fact that counsel urged the Court to

overrule *Kimberly* v. *Henderson.* The opinion is meagre and rests for its value on the Kimberly case. It is criticised as unsatisfactory in *Love* v. *Miller,* 53 Indiana, 294.

The law is well expressed in the leading case of *Coleman* v. *Meade,* 13 Bush (Ky.) 358: "The true doctrine we take to be this: The broker undertakes to furnish a purchaser, and is bound to act in good faith in presenting a person as such, and when one is presented the employer is not bound to accept him or pay the commissions unless he is ready and able to perform the contract on his part according to the terms proposed. .But if the principal accepts him, either upon ·the terms previously proposed or upon modified terms then agreed on, and a valid contract is entered into between the principal and the person presented by the broker, the commission is earned. But if, as was the case in *McGavock* v. *Woodlief,* 20 How. 221, the principal rejects the purchaser, and the broker claims his commissions, he must show, not only that the person furnished was willing to accept the offer precisely as made, but, in addition, that he was an eligible purchaser, and such as the principal was bound, as between himself and the broker, to accept."

The rule is the same, whether the employment be to "find a purchaser" (*Love* v. *Miller, supra*); "to sell" (*McFarland* v. *Lillard,* 2 Ind. App. 160); "to find customer" (*Cassady* v. *Seeley,* 69 Ia. 509 [1886]; to pay commission "on a sale" (*Rice* v. *Mayo,* 107 Mass. 550; to "make a sale" (*Simonson* v. *Kissick,* 4 Daly (N. Y.) 143; or "negotiate sale" (*Bernard* v. *Monnot,* 3 Keys (N. Y.) 203.)

The opposing argument of appellants consists of a ·quibble upon the expression "one who· ultimately becomes the purchaser," as used by JUDGE ALVEY, 29 Md. 512; and the expression in 31 Md. 250: "It is not sufficient that he should enter into an agreement to purchase; but he must actually purchase by complying with the terms agreed on, unless his failure to do so is occasioned by the fault of the vendor."

This is called a *dictum* by the Indiana Court (*Love* v. *Miller,* 53 Ind. 294), and it is such if taken in the loose sense that

"actually purchase" means actually pay for in full and get a deed for the property; but is consistent with the rule if taken, as we submit, it clearly means, *i. e.*, actually complete an inchoate agreement to purchase, by becoming a purchaser in the legal sense, obligated to accept and pay for the property, whether he actually does so or not.

Where the principal accepts the purchaser and executes a binding sale, "the deferred payments are at the risk of the vendor." *Green* v. *Hollingshead*, 40 Ill. App. 195 (1891). Here the principal of estoppel was applied, and the vendor held to be estopped to allege anything against broker's claim for commissions, except (a) fraud of the broker in inducing the acceptance, or (b) broker's causing the vendee's failure of performance. See also *Clark & Skyles on Agency*, sec. 773; *Roche* v. *Smith*, 176 Mass. 595.

"The right to a commission is not affected by the fact that the principal and the customer, after concluding a contract, subsequently enter into an agreement modifying its terms; nor can a broker be deprived of his commission by any agreement of cancellation or release made by the principal and the customer, unless the agreement is entered into at his request or with his consent, in which case he is bound thereby." 19 *Cyc.* 253.

Riggs, after he was fully aware of Ehlen's supposed inability to complete the contract had the choice of two alternatives: (1) To repudiate the contract and retain the amounts paid; or (2) To rely on it and enforce it. He chose the latter course, and the result was a compromise. This is a virtual enforcement. One who relies on and enforces a contract in his own favor, with full knowledge, cannot be heard afterward to repudiate the contract. This is elemental.

The effect of the *release* of a *binding contract* of sale on the broker's commissions, has been necessarily seldom passed upon by Courts, in view of the well-established rule (*ante*) that commissions are *earned* upon the execution of such contract. The following cases, however, turn on the release of the vendee: *Horford* v. *Wilson*, 1 Taunt. 12 (1807); *Passingham* v.

*King,* 14 T. L. R. 39 (1897); *Platt* v. *Depree,* 9 T. R. L. 194 (1893); *Foster* v. *Wynn,* 51 Ill. App. 401 (1893); *Levinstones* v. *Landreaux,* 6 La. Ann. 26 (1851); *Odell* v. *Dozier,* 104 Ga. 203 (1898); *Fairly* v. *Wappoo Mills,* 44 S. C. 227; *Willes* v. *Smith,* 77 Wis. 81 (1890); see also *Leupold* v. *Weeks,* 96 Md. 289.

PEARCE J., delivered the opinion of the Court.

This action was brought by Edwin L. Turnbull for the recovery of commissions as a broker for the sale of a house and lot, No. 903 North Charles street, the property of Clinton L. Riggs. Sometime in March, 1905, the plaintiff was employed by William B. Ehlen to purchase for him the adjoining property, No. 901 North Charles street, to be converted into an apartment house, and while this negotiation was pending the plaintiff urged Ehlen to purchase the defendant's adjoining property and convert the two into one large apartment house. Ehlen authorized plaintiff to negotiate for him for the purchase of this property also, but upon the distinct understanding that he would not pay any commissions upon that purchase, though he had agreed to pay commissions upon the purchase of No. 901, because the owner refused to pay them. After three interviews with Riggs, plaintiff negotiated a sale to Ehlen for $38,000, Riggs agreeing to pay the usual commissions of 2½ per cent. on the purchase price, the commissions to be paid when Riggs received his money, and at that time plaintiff informed Riggs that the two properties were to be used as an apartment house, but did not disclose to him that he was acting for Ehlen in the purchase of the property. On the date of the last interview, March 29, 1905, a written agreement was entered into between Riggs and his wife, and Ehlen for the purchase by the latter of the property No. 903 North Charles street for the sum of $38,000 of which $500 had been paid before the signing of the agreement, and the balance was to be paid as follows; "$4,500. on the 1st of June 1905, at which time a deed for the property shall be executed, and a mortgage for the unpaid

price shall be given, with a satisfactory bond for improvements to be erected. Said mortgage to bear 5 per cent interest and to be payable as follows : $5,000 in 6 months from date of mortgage, $3,000 in 12 months, balance payable within 5 years at option of vendee.'' The plaintiff explained that the bond for improvements mentioned in this agreement was to protect Riggs in event that the existing improvements were torn down to make way for the new and to secure him until the new improvements were erected, and Riggs testified that when Ehlen was disclosed as the purchaser he questioned his financial responsibility, and at the suggestion of Riggs brother, who was his counsel, it was stipulated in the agreement that a satisfactory bond should be given for the erection of the apartment house which was to cover the property, so that he might be protected.

On June 1st, 1905, Riggs had moved out of the house and was ready to deliver it to Ehlen, but Ehlen told him he was unable to carry out the terms of the contract, but he then paid $3,000. and asked indulgence until he could get his clients together and put the deal through. This indulgence was given and Riggs testified that he repeatedly urged Ehlen to comply with the contract and did everything in his power to aid him, personally offering to take $50,000 of the bonds to carry out the scheme of the apartment house. This condition of affairs continued until the month of October. In the meantime, Riggs had placed the matter in the hands of his brother Alfred R. Riggs, as his attorney, who testified that he told Ehlen he was instructed to enforce the contract, and Ehlen assured him he had not a dollar in the world ; that the men who had agreed to go in the deal with him had all backed out, and if he was sued, it would simply put him out of business, and Riggs would get nothing. The result of this was that on Oct. 11th, 1905, Ehlen gave his note for $2,000 payable four months after date, and the contract was cancelled by Alfred R. Riggs, attorney for Clinton L. Riggs, by endorsement thereon. No part of this note has ever been paid. The adjoining property, No. 901 North Charles St., was not converted

into an apartment house at all, and is now occupied as a furniture store, and Mr. Riggs has since endeavored to sell his property at $5,000 less than Ehlen contracted to pay, but has been unable to find a purchaser at any price because the adjoining property is in the hands of real estate speculators.

The bond for improvements stipulated for in the contract was never given, and it is clear from Ehlen's statement to Alfred R. Riggs that he was utterly unable to comply with that stipulation.

In 23 *Amer. and Eng. Enc. of Law*, 917, the general rule is said to be that "Where the purchaser presented by the broker is accepted by his employer, and they enter into a valid, binding, and enforceable contract of sale, the broker is entitled to his commissions, whether or not the contract is actually carried into effect, and the sale made." And substantially the same rule is announced in *Mechem on Agency*, sec. 966, and in *Clark and Skyles on Agency*, sec. 773. An examination of the cases shows that this rule prevails in most of the States of this country where the question has been clearly raised and decided. The ground upon which most of these cases proceed may be illustrated by the case of *Ormsby* v. *Graham*, 123 Iowa, 202, in which a consummated sale is defined as "one consummated by such a contract as will be enforced by the Courts if enforcement be demanded." And by the case of *Brennan* v. *Perry*, 7 Phil. 243, where it was held that "In order to entitle a broker to commissions there must be an actual sale vesting the right to the purchase money in the vendor, and transferring the right of property to the purchaser." But this is not the rule prevailing in England, or in this State.

In *Keener* v. *Harrod*, 2 Md. 70, the Court said, "The legal import of an agreement to procure a purchaser, binds the party to name a person who ultimately *buys* the property," as was held in *Murray* v. *Currie*, 32 Eng. Com. Law, 641, cited by the Court in support of its language. In *Kimberley* v. *Henderson and Lupton*, 29 Md. 515, the Court said, "To be entitled to their commissions as brokers they should have

completed the sale, that is they should have found a purchaser in a situation, and ready and willing to complete the purchase according to the terms agreed upon.   The undertaking to procure a purchaser requires of the party so undertaking, to produce a party *capable* and who ultimately becomes the purchaser.   These propositions are settled in *Keener* v. *Harrod and Brooke*, 2 Md. 63, and *McGavock* v. *Woodlief*, 20 How. 221."   In *Kimberly* v. *Henderson and Lupton, supra,* there was a written agreement for sale with a stipulation that in case either party should fail to comply with the contract, a forfeit of $1,000 should be paid by the party in default to the other party.   The vendee was unable to comply, being disappointed in the receipt of funds which he expected to receive, and he paid the forfeit accordingly.

In a suit for brokers' commissions, the Court below granted a prayer of the plaintiff that if the agreement for the sale of the property offered in evidence was made through the plaintiffs as brokers of defendant, the plaintiffs were entitled to their commissions as brokers, "for their services in effecting the negotiations which terminated in said agreement, as fully as if a deed had been executed for said property, and the purchase money had been paid," and refused a prayer of defendant that plaintiffs were not entitled to recover, "even if the jury found that the parties entered into the contract offered in evidence, if the jury further found that the contract of sale was put an end to by the payment by the purchaser of the forfeit of $1,000."

On appeal this Court reversed a judgment in favor of the plaintiffs, saying that the prayer of the plaintiffs should have been refused, and that of the defendant should have been granted, and it will be seen that this prayer of the plaintiffs presented the theory that the broker is entitled where the parties enter into a contract of sale, whether the contract is actually carried into effect or not, while that of the defendant made the right of recovery to depend upon the carrying of the contract into execution.

In delivering the opinion in that case JUDGE ALVEY said,

"A party was produced, it is true, and a contract entered into through the agency of the appellees, but of such a character that the party contracting, by the exercise of an option given him, relieved himself of the obligation to complete the purchase, and *did not in fact become the purchaser."* The appellee's counsel in the case before us sought to avoid the effect of this decision, because of the option given the purchaser to relieve himself of his obligation by payment of the forfeit. But this cannot avail the plaintiff. The distinct ground upon which the plaintiff's right of recovery was denied in the case referred to, was that he "did not in fact become the purchaser," and it is immaterial whether this was because he was literally unable to comply with the contract, or because the terms of the contract negotiated by the broker permitted him to substitute the payment of a forfeit for performance. The forfeit was provided for the exclusive benefit and protection of the vendor, and not for that of the broker, whose right of recovery depends absolutely upon the carrying of the contract into execution, except in the single case where the vendor by his own fault prevents its execution. The commissions are recoverable for a sale made and executed, not for the receipt of a forfeit provided to indemnify the vendor for non performance by the vendee.

In *McGavock* v. *Woodlief,* 20 How. 229, cited in 29 Md. *supra,* the Supreme Court said: "The broker must complete the sale; that is he must find a purchaser *in a situation, and ready and willing to complete the purchase* on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale." Mr. Benjamin argued that case for the defendant, the plaintiff in error, and one of his propositions, apparently approved by the Court, was that it was necessary for the broker to show " that the sale was actually made, *and the price received,* or at all events, that it was his employer's own fault that the sale was not effected." The view thus expressed by Mr. Benjamin was distinctly announced in *Chapman* v. *Winson,* 91 Law Times Rep. N. S. 17. In that case, the

broker introduced a person who signed a formal contract for the purchase of a hotel for £2000, of which £200 was paid at once, and the balance was to be paid upon completion of the purchase. The purchaser was unable to carry out this contract, and communicated this fact to the broker, who informed the vendor, but also claimed full commissions. The vendor subsequently agreed with the purchaser that the vendor should retain the £200, and that the purchaser should be released from the contract, and the broker sued for his commissions and was denied the right to recover. The Master of the Rolls said: "It seems to me the *prima facie* meaning of this contract is that the condition precedent is to be that the purchase is to be completed, in the legal sense, by payment of the purchase money. * * * In my opinion she would become the purchaser when the purchase was completed by payment of the purchase money."

In complete accord with the earlier Maryland cases, and with the above recent English case, is the case of *Richards* v. *Jackson*, 31 Md. 250, where there was a written agreement for the purchase, and the purchaser refused to comply because he was advised the title to the property was defective, though in a subsequent proceeding it was pronounced by the Court to be a good title. The broker then sued for his commissions and recovered judgment, which this Court reversed, saying, "it is not sufficient that he ( the purchaser ) should enter into an agreement *to purchase*, but he must actually *purchase* by complying with the terms agreed on, unless his failure to do so is occassioned by the fault of the vendor."

This case and the case in 29 Md: *supra*, were approved in *Melvin* v. *Aldridge*, 81 Md. 658, in which, in an equity case, it was held that where purchase money, in an executed sale was payable in installments, that the broker was only entitled to commissions on the installments as paid from time to time, because, in the language of the Court, "until they are actually paid, the terms of sale have not been complied with."

In the very recent case of *Coates* v. *Locust Point Company*, 102 Md. 291, there was an agreement between the parties

that if the lessee of property who had been procured by the
real estate broker exercised an option given him in the lease
to buy the same, that the broker should be entitled to com-
missions on the sale also.   The option was exercised but a
part only of the purchase money was paid when the broker
sued for his commissions.   It did not appear from the record
in that case just how much of the purchase money had then
been paid, or whether the circumstances were such as to re-
quire the broker to wait until the purchase money was paid,
but it was very strongly intimated that there could be no re-
covery for the amount unpaid. ·

In the present case, as we have already said, an important
term in the contract of sale, was that a satisfactory bond for
improvements to be erected should be given by the purchaser,
which improvements contemplated the tearing down of the
dwelling then on the premises.   There was not only not a
particle of evidence to show that such a bond was ever given
or tendered, but the undisputed evidence shows that the
purchaser stated to the defendants attorney that "he had not
a dollar in the world; that all the money he had put into the
transaction was borrowed money, and he was unable to bor-
row any more ; that the men who had agreed to go into the
deal with him had all backed out, *and he was unable to do
anything.*"   The giving of this bond was the only thing,
which under the scheme of improvement, would afford any
rational protection to Riggs, and without such bond there
could be no pretence of compliance with the terms of the con-
tract.

If any authority were needed to show how vital to this con-
tract is that provision, it is found in the case of *Inge* v. *McCreery*,
60 N. Y. App. Div. 557.   In that case, one of the terms re-
quired by the defendant was the production of a bond of a
Surety Company for $25,000, conditioned for the completion
of a building on the premises.   The Court said: "The un-
dertaking ( of the broker) was not to get a purchaser to take
the property and pay the purchase money. *It was more than
that.   He was to get some one to erect a large building,* and the

defendant was to make a builders loan for that purpose, when protected by the stipulated bond."

In harmony with this case it was held in *Hale* v. *Kumler*, 85 Fed. Rep. 161, that " where the (any) condition upon which a broker is to be entitled to his commissions has not been fulfilled but performance has not been prevented by the wrongful conduct of the principal, the latter is entitled, in an action by the broker for compensation, to rely upon the fact of non performance."

In the light of these principles, sound and satisfactory in themselves, and illustrated by the cases which we have cited from the Courts of this State, the Federal Court and the English Courts, there was error in the rejection of the defendant's first prayer offered at the close of the defendant's testimony, which is as follows: "The defendants pray the Court to instruct the jury that there is no legally sufficient evidence that William B. Ehlen, who signed the agreement to purchase the property referred to in the evidence, was ready and willing to complete the purchase according to the terms agreed upon, and as a matter of fact did complete the purchase, and that by the undisputed evidence in this case, the defendants were ready and willing to comply with the terms of agreement of sale, and that their verdict must be for the defendants."

In view of this conclusion it is unnecessary for us to consider any of the other prayers in the case, those offered by the defendants at the close of the plaintiff's case seeking to withdraw the case from the jury, being waived by proceeding to offer their own testimony, after the rejection of these prayers and as there can be no recovery in this state of the case, no new trial will be awarded.

*Judgment reversed with costs above and below.*