## SWEET v. H. R. HOWENSTEIN CO.
### No. 5988.

United States Court of Appeals for the District of Columbia.

Argued Oct. 2, 1934.

Decided Nov. 5, 1934.

Robert H. McNeill and Herbert S. Ward, both of Washington, D. C., for appellant.

Benjamin S. Minor, H. Prescott Gatley, and Arthur P. Drury, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a judgment for the defendant (appellee) upon a verdict directed by the Supreme Court of the District in an action for a broker's commission.

Plaintiff (appellant here) is a real estate broker of thirteen years' experience; with no license, no office, no telephone, and no knowledge as to whether the commission he claims is the usual one in such a case.

Mrs. Fravel, the purchaser in the transaction, is a boarding house keeper of slender means, who agreed to buy an apartment house for $282,500.

The defendant (appellee) is a corporation engaged in the real estate business in the District of Columbia on an extensive scale.

In the summer of 1931, after an acquaintance of several months and after sundry attempts to interest her in other properties, Mr. Sweet succeeded in interesting Mrs. Fravel in the Wade Apartment House belonging to the defendant. He thereupon informed the defendant that he had a "client" for the property; obtained a price therefor of $300,-000; and the promise of a commission if a sale should result. Thereafter, on August 12th, Mr. Sweet, Mrs. Fravel, with her son, and Mr. Howenstein, as president of the defendant corporation, met in Mr. Howenstein's office, where their negotiations resulted in the signature of a sales agreement by which Mrs. Fravel was to buy the apartment house for $282,500, of which $5,000 was to be that day paid in cash; $7,500 paid in cash 18 days later; and the remaining $270,000 paid in monthly installments of $2,056 each, secured by deeds of trust on the property. Whereupon, Mrs. Fravel gave Mr. Howenstein her check for $5,000, and departed with her son, Mr. Sweet remaining in the office with Mr. Howenstein, where they made an agreement for Mr. Sweet's commission, which was indorsed on copies of the sale contract in these terms: "Commission to Sweet to be $8,900—total—$2,500 in cash & $400 a month if paid by purchaser. H. R. Howenstein. Approved: E. V. R. Sweet." And in addition to this side agreement, there seems to have been a further understanding among the brokers that the sales manager of the Howenstein Company should receive $500 out of Mr. Sweet's commission.

At this time both Mr. Sweet and Mr. Howenstein "thought we had the $5,000 referred to in the contract," as Sweet testified, and accordingly he requested Mr. Howenstein to advance him $500 immediately, which Mr. Howenstein prudently declined to do until the check could be cashed. Thereupon Sweet withdrew for a short time, while Howenstein sent the check to the bank, where payment was refused.

It is not clear in the record whether the check was dishonored because it was drawn upon a savings account not subject to check, or because Mrs. Fravel had stopped payment thereon, or for both reasons, but in her checking account the balance on that day was $800,

while in the savings account there was a balance of $7,000.

On the same day Sweet returned to Howenstein's office for his $500, and, on being told the check had been dishonored, went out in search of Mrs. Fravel, whom he did not find, but who came to Howenstein's office of her own motion, saying that she was nervous and distressed at the arrangement; wished to withdraw from the deal; and left Washington the same evening.

On the following day Mr. Howenstein canceled his indorsement on the check, returned it to Mr. Sweet as Mrs. Fravel's agent, canceled her receipt for the deposit, and wrote Mrs. Fravel that as her check had been dishonored her deposit had failed, and the contract was ended, but that he was willing to renew the negotiation if she desired it on her return to the city. In so doing, we think Mr. Howenstein acted with commendable promptness and with entire fairness to all parties interested. Yet Mr. Sweet contends that his action was wrongful as to him because he had produced a purchaser, ready, able, and willing to buy at the seller's price, and that, therefore, he was entitled to his broker's commission, which Howenstein could neither cancel nor surrender.

█ But the facts do not bring the matter within the general rule so relied on by Sweet, even if the general rule governed this case, which it does not. For here a woman of small means was taken to a real estate office and talked into a momentary readiness to sign an agreement to buy property beyond any resources the record reveals her to possess; this agreement she repented and wished to withdraw within the hour; her check was dishonored; her deposit failed; and she departed the jurisdiction. Such an introduction of Mrs. Fravel to Mr. Howenstein is not the production of a purchaser ready, able, and willing to buy, for such a purchaser must be prepared to close and able to perform his contract. Mannix v. Hildreth, 2 App. D. C. 259; Block v. Ryan, 4 App. D. C. 283; Fox v. Cohen, 34 App. D. C. 389; Riggs v. Turnbull, 105 Md. 135, 66 A. 13, 8 L. R. A. (N. S.) 824, 11 Ann. Cas. 783; McGavock v. Woodlief, 20 How. 221, 15 L. Ed. 884.

█ However, this action rests not upon the usual contract between owner and broker but upon a special and conditional contract pleaded and proved by the plaintiff, from which it is apparent that the defendant's liability was contingent upon an occurrence which never took place. For the contract fixes the total commission at $8,900, receivable in certain installments, "if paid by purchaser." Under this contract, the broker must show not only that his client agreed to buy but that he bought and paid; for a vendor of land is under no obligation to hold or to sue a defaulting vendee, though a broker's commission may incidentally be lost in the controversy. In such a situation the vendor may sue for specific performance, or for damages, or may acquiesce in the default as a forfeiture of the contract. Richards, Executor, v. Jackson, 31 Md. 250, 1 Am. Rep. 49; Riggs v. Turnbull, 105 Md. 135, 66 A. 13, 8 L. R. A. (N. S.) 824, 11 Ann. Cas. 783; Hale v. Kumler (C. C. A.) 85 F. 161; Ash v. Oppman, 199 Ill. App. 573; Dunne v. Colomb, 192 Cal. 740, 221 P. 912; Sams v. Olympia Holding Co., 153 Wash. 254, 279 P. 575; Simon v. Myers, 284 Pa. 3, 130 A. 256; Amies v. Wesnofske, 255 N. Y. 156, 174 N. E. 436, 73 A. L. R. 918.

And this rule governs, except where consummation of the sale is prevented by a default of the seller or a defect in his title. But to exercise his legal right and elect among his alternative remedies is neither a default nor a defect, and that is precisely what Mr. Howenstein did in this case.

The judgment is affirmed, with costs.

Affirmed.