# EDWARD C. CARRINGTON, JR.,

*vs.*

# JOHN W. GRAVES.

*Brokers' commissions: sale prevented by the act of the principal.*
*Written instruments: construction of—; for the Court.*
*Prayers: erroneous theory of law according*
*to conceded facts.*

If a broker is to be paid by the purchaser, he can not recover unless the sale is consummated on the terms agreed upon, unless it was owing to the purchaser's improper conduct that the sale was not so consummated.                             p. 572

But if a broker procures an agreement to sell on terms satisfactory to the proposed purchaser, on the latter's promise to pay a commission, and the sale fails of consummation only because of the improper conduct of the purchaser, the payment of the commissions may not be lawfully refused.              p. 572

A prospective purchaser agreed with a broker to pay him "upon the consummation of the purchase of said property; that is, the payment of the balance of the purchase money, after the delivery of the deed, the sum of $300, etc."; on the ground that he had been deceived by a misrepresentation as to the location of the property, the purchaser refused to consummate the purchase. In a suit by the broker for the commissions, it was *held,* that if the misrepresentation complained of was as to a material fact, and one which had induced the party to agree to take the property, it would form a valid defense to the declaration; but that if the misrepresentation was not as to a material fact, or if the purchaser's refusal to consummate the purchase was arbitrary and capricious, the purchaser was liable for the commissions.                             p. 576

The construction of a written instrument is for the Court.

p. 575

Prayers that do not correctly state the law according to the conceded facts are erroneous.                    p. 575

*Decided November 12th, 1913.*

Appeal from the Superior Court of Baltimore City (ELLIOTT, J.).

The facts are stated in the opinion of the Court.

The following are the prayers offered by the plaintiff and defendant respectively and the action of the Court thereon:

*Plaintiff's First Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the defendant agreed with the witness, Spalding, to purchase the farm as set out in the contract offered in evidence in this case, and that the defendant had sixty days within which to consummate the purchase of said property, and that the defendant agreed to pay the plaintiff the sum of three hundred dollars ($300) for his work in purchasing the farm for six thousand dollars ($6,000), if the jury so find, then their verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's Second Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the plaintiff sold the farm mentioned in the evidence to the defendant for six thousand dollars ($6,000), which sale the owner and witness, Spalding, sanctioned or acquiesced in, and the defendant signed the contract offered in evidence in this case, and agreed to consummate the sale within sixty days, and agreed by letter bearing date the 28th day of October, 1907, and offered in evidence in this case, to pay the plaintiff three hundred dollars ($300) for procuring the sale of said farm to the defendant, then their verdict must be for the plaintiff, unless the jury find that the sale was not consummated because of default on the part of the plaintiff in this case. (*Granted.*)

*Defendant's First Prayer.*—The defendant prays the Court to instruct the jury, that under the pleadings and evidence the plaintiff is not entitled to recover and their verdict must be for the defendant. (*Refused.*)

*Defendant's Second Prayer.*—The defendant prays the Court to instruct the jury that it appears from the evidence that the plaintiff did not get the said Henry F. Spalding to enter into a legally binding contract for the sale of his property to the plaintiff, and that their verdict must be for the defendant. (*Refused.*)

*Defendant's Third Prayer.*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence that the balance of purchase money for the property mentioned in the evidence was paid, and that there is no legally sufficient evidence that the deed for the property mentioned in the evidence was delivered, and their verdict must be for the defendant. (*Refused.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury, that if they believe from the evidence that a sale of the property was not carried out, because the plaintiff misrepresented to the defendant the location of said property, then the plaintiff is not entitled to recover and their verdict must be for the defendant. (*Granted.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury, that if they believe from the evidence that the land of Henry F. Spalding, attempted to be sold by the plaintiff to the defendant, did not bind upon the Patuxent River, and also believe from the evidence that the plaintiff represented to the defendant that said land did bind on such river, and shall also believe from the evidence that no sale of said land was ever carried out because said land did not bind on said river (if they so find) then their verdict must be for the defendant. (*Granted.*)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury, that if they believe from the evidence that the plaintiff attempted to sell to the defendant certain property in St. Mary's county as belonging to Henry

F. Spalding, and the jury shall also find from the evidence that the said Henry F. Spalding did not own and could not sell to the defendant, the property offered to the defendant by the plaintiff, and shall also find from the evidence that the sale of said property was never carried out, because Henry F. Spalding did not own said property offered to be purchased (if they so find), then their verdict must be for the defendant. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William Ewin Bonn,* for the appellant.

*J. Royal Tippett,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the appellant for "Commission on purchase of timber land in St. Mary's County," to quote from the account filed. An agreement signed by the appellee as agent of Henry F. Spalding, the owner of the property, and by the appellant was offered in evidence and contained the following provisions:

"Baltimore, Md., October 28, 1907.

"Sold to Edward C. Carrington, Jr., the Spalding tract of ground, containing four hundred and eighty-nine (489) acres, more or less, situated in the 6th Election District, St. Mary's County, Maryland, on the East side of Three Notch Road. * * * The title to said property is to be good and merchantable and is in fee simple. The purchaser to have sixty days within which to examine title * * * The purchase price of the above is six thousand dollars ($6,000); one hundred dollars having been paid on account thereof, and the balance is payable in cash within sixty days from date, upon the delivery to the purchaser of a good and sufficient deed for said property."

Mr. Carrington gave Mr. Graves his check for $100.00 at the time of signing the contract, and the latter forwarded his own check to Mr. Spalding for that amount, advising him that he had sold the property and that the balance of the purchase money was to be paid within sixty days. Mr. Spalding returned the check saying he could not accept it until he knew more about the conditions. On the day the above agreement was signed Mr. Carrington gave Mr. Graves the following letter:

"Dear Sir:—Having purchased of you the Spalding tract in the 6th Election District of St. Mary's County, Md., inasmuch as I am advised that your authority from Mr. Spalding was to sell the property for an amount sufficient to net him six thousand dollars ($6,000), in order that you be within the strict power of your authority, I hereby agree to pay you upon the consummation of the purchase of said property, that is, the payment of the balance of purchase money and the delivery of the deed, the sum of three hundred dollars as commission. Yours truly (Signed) Edward C. Carrington, Jr."

Mr. Spalding and Mr. Carrington were afterwards brought together by Mr. Graves and they agreed to accept all the conditions of the sale. Mr. Spalding never called for the hundred dollars and the appellee finally credited the appellant with it on his claim—thus reducing it to $200.00 with interest. The sale was not consummated but this suit was brought to recover the balance of the three hundred dollars, alleged by the appellee to be due him. The trial resulted in a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal was taken.

The plaintiff offered two prayers, which were granted, and the defendant offered six—the first, second and third of which were rejected and the fourth, fifth and sixth were granted. In this State there are a number of decisions to the effect that in order to entitle a broker to commissions from a vendor

he must have completed the sale—that is, he must have found
a purchaser in a situation, and ready and willing, to complete
the purchase according to the terms agreed upon.    The pro-
posed purchaser must actually purchase by complying with
the terms agreed on, unless his failure to do so is occasioned
by the fault of the vendor.    *Riggs* v. *Turnbull,* 105 Md. 135,
where JUDGE PEARCE cited a number of the previous cases.
If the broker is to be paid by the purchaser, the general rule
applicable thereto likewise is that he cannot recover commis-
sions for the sale, if it was not consummated on the terms
agreed upon, unless it was owing to the purchaser's improper
conduct that it was not so consummated; but if the broker
procures an agreement to sell on terms satisfactory to the
proposed purchaser, on a promise by the purchaser to pay a
commission, and through improper conduct of the purchaser,
the sale is not consummated, he will not be permitted to es-
cape payment of the commissions.

A statute has been passed which materially changes the
rule in this State as to the right of brokers to commissions
when the contract has not been carried into effect, Article 2,
section 17 of Code of 1912, but as it was passed after this
agreement was made, it need not be further mentioned.    But
the record shows that the only agreement under which the
appellee can recover, if at all, is that contained in the letter
of October 28th, 1907, above quoted.    It is true that he first
testified: "Mr. Carrington asked for the price and asked wit-
ness if he could secure the property for him.    Witness told
him he could, and Mr. Carrington told him that he would
pay $300 if he would secure the property for him, or put
him in a position where he might have it. * * * Mr. Carring-
ton agreed to pay the $6,000.00.    That the agreement of
purchase was in writing," and he then identified it and it
was offered in evidence.    But, as we have seen, when he for-
warded his check to Mr. Spalding, advising him that he had
sold the property, Mr. Spalding returned it, saying he would
not accept it until he knew more about the conditions, and

appellee further testified: "After witness had made the sale, then he brought Mr. Spalding and Mr. Carrington together, and both parties in his presence, agreed to accept every term and condition as made in that sale. Mr. Carrington agreed to pay witness $300.00, *as per letter dated October 28th,* 1907, which was offered in evidence and is as follows." The letter is then set out in the record, and the witness continued: "Mr. Carrington and Mr. Spalding both agreed in his presence, *after this letter was written,* to accept all the conditions of the sale."

The terms of the payment of the $300.00 as commissions are therefore set out in the letter, and the appellee was as much bound by them as the appellant was. Those terms are: "I hereby agree to pay you upon the consummation of the purchase of said property, that is the payment of the balance of purchase money, and the delivery of the deed, the sum of three hundred dollars as commission," etc. There can therefore be no doubt that the appellee was not entitled, under those terms, to recover the commission before the consummation of the purchase as therein explained, unless the sale was not consummated by reason of the fraud or arbitrary and capricious conduct of the appellant. It is clear that if that be so, the two prayers of the plaintiff as offered (which we will ask the Reporter to publish) should not have been granted. Neither of them mentions the fact that the purchase was not consummated and both of them wholly ignore the terms of the letter, above quoted. There is no qualification in the first prayer to the right of the plaintiff to recover, and the only one in the second is the conclusion which states, "unless the jury find that the sale was not consummated because of default on the part of the plaintiff in this case."

The ground relied on by the appellant was that the plaintiff had represented to him that the land extended to the Patuxent River and by that representation he was induced to purchase. It was not contended that there was any default on the part of *the plaintiff* in the consummation of the sale. We might point out several material objections to both of

these prayers but it is sufficient to say that under the concessum in the case the letter contained the terms under which the plaintiff would be entitled to the commission and neither of these prayers rely on those terms for the right to recover, but on the contrary base that right on facts wholly different from those stated in the letter.

The Court did, however, in the three granted prayers offered by the defendant instruct the jury as to the effect of the misrepresentation relied on by him. The fourth instructed the jury that if they believe "that a sale of the property was not carried out because the plaintiff misrepresented to the defendant the location of said property, then the plaintiff is not entitled to recover and their verdict must be for the defendant." The fifth is more specific—instructing the jury that if they found that the land did not bind on the Patuxent River, that the plaintiff reported to defendant that it did so bind, and that no sale was carried out because it did not, the plaintiff could not recover, and the sixth was on the theory that plaintiff undertook to sell to defendant property that Spalding did not own, and could not sell.

It is contended by the appellee that the granted prayers of the defendant sufficiently qualify those of the plaintiff to correct the alleged errors in them, if standing alone. It is true that it does not always follow that there must be a reversal of a judgment if a prayer granted at the instance of the plaintiff does not include all the facts necessary to entitle him to recover, for it may be that another granted prayer sufficiently corrects the omission, but it must very clearly appear that the jury could not be misled by such omission. When it is intended to qualify or limit one prayer by another, the correct practice is to refer to the other such terms as the jury will see that it is so intended, for otherwise they may be misled or may overlook the effect of the qualifying one. There are many decisions on the subject in this State, but in the recent one of *Robinson* v. *Silver,* 120 Md. 41, JUDGE STOCKBRIDGE referred to a large number of them and very clearly stated the rule, and we need not refer to others.

The great difficulty is that the plaintiff's prayers do not correctly announce the law applicable to the facts, as proved by the plaintiff and not denied by the defendant, in reference to the contract for commissions. The theory of the prayers of the plaintiff is that the defendant agreed to pay him the $300.00, as stated in his first prayer "for his work in purchasing the farm for six thousand dollars," or as stated in the second, "for procuring the sale of said farm to the defendant," and he still so contends in this Court. But this is not a case in which there are two theories as to what the contract was, for although the plaintiff first said that, "Mr. Carrington told him that he would pay $300.00, if he would secure the property for him, or put him in a position where he might have it," he subsequently testified what is stated above and distinctly said that when the terms of sale were agreed upon by Mr. Spalding and Mr. Carrington, Mr. Carrington agreed to pay him as per letter dated October 28th 1907. We have seen what the agreement, thus reduced to writing and upon which the appellee acted, was. and it is not what either of the plaintiff's prayers said it was. Inasmuch as it was in writing it was for the Court to construe it, and the construction placed on it by the plaintiff's prayers was an erroneous one. So this case as presented is not, as it would have been if the agreement had properly been set out in the plaintiff's prayers, whether the granted prayers of the defendant can be treated as a limitation or qualification of those of the plaintiff and all considered together without danger of the jury being misled, but whether the prayers correctly state the law as applicable to the conceded facts. As we are of the opinion that they do not, for the reasons stated, we must reverse the judgment.

The defendant's first, second and third prayers were properly rejected. Under the terms of the latter the appellant was only liable upon the consummation of the purchase, which the letter says means payment of the balance of the purchase money and the delivery of the deed, and it being shown that the balance of the purchase money was not paid

and the deed was not delivered, the commissions cannot be recovered, unless the plaintiff can show that the sale was not consummated owing to the bad faith or fraud, or to the arbitrary and capricious conduct of the appellant. If it be true that the appellee represented to the appellant that the property bounded on the Patuxent River, and that induced the appellant to enter into the agreement and was in his opinion a material fact, then he had the right to refuse to take the property, and the plaintiff was not entitled to recover the commission, but if there was no such representation, or if it was not a material question in inducing the appellant to agree to purchase, and the defendant simply arbitrarily and capriciously or fraudulently refused to consummate the sale, he is liable to the plaintiff, as the latter had the right to assume, when he undertook the work, that the appellant would act in good faith and would consummate the sale unless there be some valid reason for not doing so. We mention the one reason as that was the only substantial one relied on. It was true that something was said about the lines between the property of Mr. Spalding and that of his mother being in dispute, but we do not understand that there is anything in the record to sustain that, as the record apparently referred to a contention between his mother and Mr. Jones, and at any rate there is nothing to show that the appellant objected to taking the property on that ground or that it could not readily have been arranged if he had called it to the attention of the appellee.

> *Judgment reversed and new trial awarded,*
> *the appellee to pay the costs.*