SINGER CONSTRUCTION COMPANY *vs.* FELIX V. GOLDSBOROUGH.

*Corporate Officer—Authority—Contract With Broker—Offer and Acceptance—Consideration—Right to Commissions.*

One cannot complain of the exclusion of a question if the witness subsequently answers the inquiry.                                    p. 631

Where an agreement is made as a part of a corporation's daily business and in reference to a matter which is a common incident of its current corporate activities, by an officer whom

it has allowed to act publicly in that capacity, the officer bears the same legal relation to the company as an executive committee, a general manager, or a general agent, and his acts will bind the company to an *intra vires* contract made in its behalf with a third party. pp. 632, 633

An authorized agreement made by a corporate officer involving the employment of a broker to sell corporate property is not affected by the fact that the subsidiary details in carrying out the main object of such employment, in case the broker procures a purchaser, are left to a subordinate. p. 633

In an action by a broker for commissions on a sale of land belonging to defendant corporation, *held* that the evidence was sufficient to authorize a finding that the treasurer of the corporation was authorized to employ the broker. pp. 633, 634

The Court of Appeals has nothing to do with an issue of fact which was raised below, submitted for a finding, and decided by the verdict, provided there were any legally sufficient facts justifying the submission of the case to the jury, or to the court sitting as a jury. p. 634

After a broker employed by the owner of land has procured a purchaser, who is accepted by the owner, the latter cannot repudiate its contract without responding in damages to the broker, whose rights are not affected by the payment of commissions to another broker who produces a second buyer.

p. 636

Where a broker makes an offer to the owner of property to try to procure a purchaser on terms to be fixed by the owner, if the owner will give him a named period within which to do so, and the owner names his terms and makes his counter promise to let the broker have the period named within which to procure a purchaser, the consideration for the broker's promise is the promise of the owner to give the broker the designated time in which to find a purchaser, and the further promise to pay commissions on condition that a buyer be procured as a result of the broker's promised undertaking. pp. 636, 637

When the offer of a promise by a broker to try to find a purchaser for property within a named time is accepted by the owner's counter promise to allow him such time for the purpose, the owner naming the terms of sale, they are both there-

after bound, although commissions will not be earned by the broker until the fulfilment of his obligation under the contract has actually resulted in the procurement of a purchaser able, ready, and willing to comply with the prescribed terms. p. 637

When a broker employed by the owner finds a purchaser within a specified time who is able, willing, and ready to buy upon the specified terms, the broker's powers are exhausted, no authority having been conferred on him to execute a contract of sale for the owner with the purchaser. p. 637

Where a broker employed by the owner procures a purchaser who offers to execute a contract upon the terms prescribed by the owner and acceptable to the latter, while the owner may refuse to enter into a contract of sale with the proposed purchaser, without incurring any liability to him, he does not have such right of refusal as regards the broker. p. 638

Where the agent has done all that he undertook to do, and procured a buyer as contemplated, he may not be deprived of his right to remuneration by the circumstance that the sale has fallen through by the unwarranted refusal of the principal to enter into a contract to carry out the authorized sale according to its prescribed terms. p. 638

The principal's refusal to complete the contract is a waiver of subsequent conditions whose fulfilment is rendered impossible by the principal's action. p. 638

On a demurrer by the defendant to the evidence, the court must, for the purposes of its ruling, accept the hypothesis that the testimony supporting plaintiff's theory is true. p. 639

*Decided April 7th, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by Felix V. Goldsborough against the Singer Construction Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Walter H. Buck,* for the appellant.

*Albert S. J. Owens* and *Philander B. Briscoe,* with whom were *Briscoe, Jones & Martin* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Felix V. Goldsborough, a licensed real estate agent, appellee, recovered a judgment against The Singer Construction Company, a corporation, the appellant, in the sum of $2,137.50, as commissions for procuring a purchaser for appellant's thirty-six properties at Westport for $2,250 each, making the total price $81,000. The case was tried before the court on the common counts, and there are but two exceptions on the record. The first is to a ruling excluding, on cross-examination, a question asking the appellee if he had "closed the deal" at a certain time and place. This exception was not pressed on appeal, but it could furnish no ground for reversal, because the witness subsequently answered the inquiry by telling where the deal, in his opinion, was closed. If a party introduce at a later point in a witness's examination testimony which had been before held inadmissible, he cannot complain of the adverse ruling, as ultimately no injury resulted from the exclusion. It is a legal commonplace that an exception cannot be sustained unless it combines both error and injury.

The second exception is to the action of the court in overruling appellant's special exception to the appellee's first prayer, and in granting appellee's first prayer and in refusing the appellant's third, fourth and fifth prayers. In granting the appellee's first prayer there was no reversible error, unless the appellant's theory that there was no legally sufficient evidence to entitle the appellee to recover be sound. This theory was presented by the special exception of the appellant, and by its third, fourth and fifth prayers. The special exception to appellee's first prayer is that there was no evidence in the case to show, or tending to show, the terms of sale that were authorized by the appellant. The three rejected prayers of the appellant are demurrers to the evi-

dence. The point made by the special exception is embraced in the questions raised by the rejected prayers, and, therefore, the special exception and the rejected prayers will not require separate consideration.

The appellant's theory of a failure of proof rests upon the propositions, first, that the alleged employment of the appellee was unauthorized by the appellant; and, second, that there was no valid agreement between the buyer and the appellant, or its authorized agent, for the purchase and sale of the leasehold properties.

1. The Singer Construction Company is a body corporate, with its place of business in Baltimore. It was formed for the purpose of taking title to the real and leasehold property of a certain Frank D. Singer, Jr., and of liquidating his affairs by selling the property thus acquired. It opened an office, and, at the time of the transaction in question, its affairs were in charge of Richard B. Tippett, president, John M. Requhardt, treasurer, and Harry E. Silverwood, secretary, and its usual and routine business was selling its holdings of real and leasehold property. The sales were made without submission to a board of directors, and the testimony unquestionably tended to establish that the three named officers of the company were in charge, and that, before Mr. Requhardt left for Europe, either he or Mr. Tippett fixed the prices at which the properties were sold and executed the contracts of sale. It is also clear that there was sufficient evidence to prove that it was in the regular course of the company's business, and within his authority as one of its managing officers, for Mr. Requhardt, its treasurer, to begin, conduct and conclude the sale of properties, including the fixing of the price of sale, and the employment of real estate brokers in these transactions.

According to the testimony on the part of the appellee, the agreement in dispute was made with its officer, Mr. Requhardt, as a part of the appellant's daily conduct of its business and in reference to a matter which was a common incident of the exercise of its current corporate trade activi-

ties, and with an officer whom it had allowed to act publicly in that capacity. Under these circumstances such an officer bears the same legal relation to the company as an executive committee, a general manager or a general agent, and his acts will bind the company to an *intra vires* contract made in its behalf with a third party. *Owners' Realty Co. v. Cook,* 123 Md. 1, 2; *Lester v. Allen,* 31 Md. 543, 547; *Northern Central Ry. Co. v. Bastian,* 15 Md. 494, 501; *Carrington v. Turner,* 101 Md. 437, 442, 443; *Buchwald Co. v. Hurst,* 111 Md. 572, 576, 580; *Md. Trust Co. v. Mechanics' Bank,* 102 Md. 608, 634, 635; *Himmel v. Merchants T. & S. Co.,* 134 Md. 38, 41; *Sun Printing and Publishing Assn. v. Moore,* 183 U. S. 642, 649, 653; *Martin v. Webb,* 110 U. S. 7; *Henderson v. Raymond Syndicate,* 183 Mass. 443, 446; *Melledge v. Boston Iron Co.,* 5 Cush. (Mass.) 158, 175, 179; *Topping v. Bickford,* 4 Allen (Mass.), 120; *Sherman v. Fitch,* 98 Mass. 59, 64; *Chestnut Street etc. Co. v. Record Pub. Co.,* 227 Pa. St. 235, 240; *Phillip v. Campbell,* 43 N. Y. 271, 272; *Chambers v. Lancaster,* 160 N. Y. 342, 349; *Hess v. Sloane,* 66 N. Y. App. Div. 522, 526, 173 N. Y. 616; *Chilcott v. Washington State Colonization Co.,* 45 Wash. 148, 152; *Curtis L. & L. Co. v. Interior L. Co.,* 137 Wis. 341, 351, 352; *Louisville etc. Ry. Co. v. Louisville Trust Co.,* 174 U. S. 552, 573, 576.

If the appellee's version of this agreement be accepted as correct, the terms of his employment were fixed with Mr. Requhardt, and this agreement would be unaffected by the fact that Mr. Requhardt, because of his approaching trip to Europe, left for the attention of Mr. Silverwood, the secretary of the company, the subsidiary details in carrying out the main object of the employment of the appellee, in the event he should procure a purchaser, and present him for the consummation of a sale between the buyer and the comapny. The exigencies of business may, from time to time, require a subordinate agent to perform a ministerial act in the course of the fulfilment of the authorized agreement of his superior officer, if no special discretion or skill is re-

quired. *Story on Agency*, sec. 20; *De Busche v. Alt,* 8 Ch. D. 286.

2. It follows from what we have said that there was enough evidence to find that the treasurer was authorized to employ a real estate broker for his company to sell its property. It is quite true that the employment of the appellee was denied, but this Court has nothing to do with this issue of fact, which was raised below, submitted for a finding and decided by the verdict. It is our restricted province to consider whether there were any legally sufficient facts justifying the submission of the case to the court, sitting as a jury.

The appellee offered evidence tending to show that he was present in the office of the appellant on Thursday, May 31st, 1923, when a sale of thirty-six leasehold lots, with improvements, at Westport, the property of the appellant, was rescinded by agreement. The parties present, who acted for the appellant, were John M. Requhardt, its treasurer, and Henry E. Silverwood, its secretary. As they walked out of the office, appellee followed, and he testified that the following conversation took place in the corridor. The appellee said: "John Requhardt, give me those properties for about twenty-four hours, I think I can dispose of them. He said, 'All right, go ahead and sell them—$2,250.' I said, 'All right, subject to the ground rent' and mortgage liens.

It was then about half-past four o'clock in the afternoon, and appellee went to work to make the sale. He secured in the morning of the next day a purchaser at the given price of $2,250 for every property, if the buyer could get necessary financial help; and he also obtained an offer of $2,200 a lot before one o'clock of the same afternoon, when he encountered Mr. Requhardt on the street. The appellee informed Mr. Requhardt that he had the two prospective buyers, but Mr. Requhardt declined to discuss any business matters, as he was leaving for Europe the next day, and referred him to Mr. Silverwood, stating "You talk to Mr. Silverwood, take up any matter with him, and if you have any dealings about

these buildings talk with Mr. Silverwood, and he will take care of you, and take care of the transaction," and the appellee left, saying "All right."

At four o'clock of the same afternoon appellee obtained an offer of $2,250 for every one of the leasehold lots subject to the ground rent and mortgage on every lot. The sale aggregated $81,000, and the purchaser was ready, willing and able to close the deal. The appellee called by telephone, but found Mr. Silverwood out. The appellee then left his office and met Silverwood on Lexington Street about quarter past four, and told him that the sale had been made to Meyer Abramson. The reply was "Well, I am not particular about doing business with Mr. Abramson, but still that doesn't make any difference, I will close the deal with him." By common consent an appointment was made to meet at the office of the appellant on the following morning for the execution of the necessary papers. The appellee and the purchaser kept the engagement and informed Mr. Silverwood that they were there to execute the contract of purchase and to make the deposit. According to the record, this conversation took place between Silverwood and the appellee: "Mr. Silverwood said, 'You can't close the deal; I gave an option on these houses last night at six o'clock to hold good until noon today for twenty-three hundred dollars apiece, and you can't buy them for three thousand dollars.' 'Why,' I said, 'I have already bought them, my man here, the houses belong to him, I sold them to him, you agreed to put the deal through.' He said, 'It doesn't make any difference; it couldn't be sold for three thousand dollars, but if you come back today at noon and my man hasn't taken them, you can have them.' Well, I was more or less put out and angered. I left there and came back at noon time, or three or four minutes of noon, and Mr. Silverwood said, 'They are gone; I am closing the deal for them.' I left there without making any other comment."

The appellee offered other testimony to establish that, after this interview, he and the purchaser saw the president

of the company in an effort to get an execution of a contract in conformity with the terms of the sale; and that, although the purchaser was able, ready and willing to complete a sale within the time given, according to the terms specified, the appellant refused. The appellant made a sale of the same properties to another party at the increased price of $2,300 a lot, on Saturday, as a result of a negotiation which was begun by Mr. Silverwood between five and six o'clock on the previous Friday afternoon, or about an hour after the meeting of Mr. Silverwood and the appellee on Lexington Street, where, according to the appellee, the purchaser procured by him was accepted and it was arranged, as a matter of convenience, that the sale made by the appellee should be closed the next morning. It was then too late for the seller to repudiate its contract without responding in damages to the broker, whose rights are not affected by the payment of commissions to another broker producing the second buyer.

If these recited facts are true, the offer of the broker to the owner, in substance and effect, was that if the owner would promise to give the broker the leasehold property to sell during a period of twenty-four hours, the broker would employ his special skill and experience as a real estate broker in an attempt to procure the owner a purchaser within the period allowed, on terms to be fixed by the owner, as it was the broker's belief that it was within his ability so to find a buyer, which would entitle him to be paid; but, if he failed, he should not receive any compensation. What the broker offered was not a stipulation to make a sale, but merely an offer of his promise to employ a certain definite time in the performance of some earlier act in the effort to find a buyer. The owner, in consideration of this offer by the broker to do a future act which otherwise he was not legally bound to do, and which was a detriment to him and a benefit to the owner, fixed the price and the terms upon which it would be willing to sell during the period named, and made its counter-promise as requested, to let the broker have the time mentioned within which to secure a buyer

upon the terms specified, provided that compensation be conditioned on his producing the buyer. The consideration for the promise of the broker was (a) the promise of the owner to give the broker the designated time in which to work to find his purchaser, and (b) the further and separate promise to pay commissions on condition that a buyer be procured as a result of the broker's promised undertaking.

When the offer of the promise by the broker was accepted by the owner's counter-promise, the contract was then formed and the broker and the owner were thereafter both bound by any of the terms of the contract, notwithstanding the broker's commission would not be earned until the fulfilment of his obligation under the contract had actually resulted in the procurement of a purchaser, who was able, ready and willing to comply with the terms prescribed. *Langdell's Summary of Law of Contracts,* secs. 11, 14, 183, 184. The broker began at once the performance of his promise by employing his art as broker to get a buyer, while the owner discharged its obligation by affording him the allotted period. 1 *Williston on Contracts,* secs. 60 a, 61, 65; *Offard v. Davies,* 12 C. B. (N. S.) 748; *Martin v. Meles,* 179 Mass. 114; 2 *Mechem on Agency* (2nd Ed.), secs. 2445, 2451, 2453, 2454. See Sir Frederick Pollock in 28 *Law Quarterly Review,* p. 100; *Manchester Ship Canal Co. v. Manchester Race Course Co.* (1901), 2 Ch. Div. 37, 51.

When the agent found and presented to the owner, within the time specified, a purchaser who was able, willing and ready to buy upon the terms specified, the agent had exhausted his power under the contract, as no authority had been conferred upon him to execute a contract of sale for the owner with the purchaser. *Brown v. Hogan,* 138 Md. 257, 266, 269; *Karupkat v. Zoph,* 140 Md. 242, 245, 246. The buyer, however, offered to execute the contract upon the terms prescribed by the appellant and acceptable to it, and a binding contract of sale was not executed for the sole reason that the appellant refused on the ground that it was not bound by any contractual relation with the appellee. As has

been seen, this was an unwarranted position to take. It is quite true that the seller was not bound by any contract with the buyer, and could refuse to enter into a contract of sale with him without incurring any liability to the buyer. With reference to the broker, however, the seller's status was different, and, although it had the power to decline to complete the sale to a purchaser procured by the broker, yet, as to the broker, it did not have the legal right to refuse except at its peril of liability. 1 *Mechem on Agency*, sec. 568. The contention of the appellant that the broker was not entitled to recover because there was no actual contract of sale entered into between it and the buyer, who was procured by the broker, is unsound, because it ignores the proof that completion of the sale by a contract in accordance with the specified terms was wholly prevented by the default and refusal of the appellant.

Where the agent has done all he undertook to do, and procured a buyer as contemplated, he may not be deprived of his right to remuneration by the circumstance that the sale has fallen through by the unwarranted refusal of the principal to enter into a contract to carry out the authorized sale according to its prescribed terms. The principal's arbitrary declination to complete the contract is a waiver of subsequent conditions whose fulfilment is made impossible by the principal's action. Under such circumstances, the broker is entitled to recover compensation for his services. Even if the offer of the seller contemplated calling for an acceptance by an act (*i. e.*, the procuring of a purchaser) so that a contract did not arise until the act was done, the appellant would be liable as the appellee, before revocation of his employment to sell, had furnished the act requested (*i. e.*, the procuring of a purchaser) upon which a promise to pay commissions arose, and it was solely through the refusal of the appellee that the sale was not consummated. Whether viewed as a bilateral or a unilateral contract, the case was for the jury on the hypothesis that the testimony supporting the theory of the appellee was true, and, on a demurrer to

the evidence, it is this hypothesis which the court must accept for the purposes of its ruling. *Richards v. Jackson,* 31 Md. 251, 253; *Schwartz v. Yearly,* 31 Md. 270, 278; *Glenn v. Davidson,* 37 Md. 365, 367; *Riggs v. Turnbull,* 105 Md. 135, 150, 151; *Carrington v. Graves,* 121 Md. 567, 572; *Coppage v. Howard,* 127 Md. 512, 521, 525; *Stokes v. Wolf,* 137 Md. 393, 408, 411; *Kock v. Emmerling,* 22 How. 69; *McGarvick v. Woodlief,* 20 How. 229; *North Ave. Casino Co. v. Furguson,* 130 Md. 376, 380, 381; 2 *Williston on Contracts,* sec. 1030; *Crowe v. Trickey,* 204 U. S. 228, 238, 240; 2 *Mechem on Agency* (2nd Ed.), secs. 2447, 2453, 2455, 2439, 2461; *Rowan v. Hull,* 55 W. Va. 885, and annotations in 2 Am. Cas. pp. 884, 888, and in 43 L. R. A. pp. 593, 599; 23 *Am. & Eng. Ency.,* 919.

For the reasons assigned, the Court does not find reversible error in the bills of exceptions taken, and the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*