# WYAND ET UX. *v.* PATTERSON AGENCY, INC.

[No. 224, September Term, 1973.]

*Decided May 20, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH. DIGGES, LEVINE and ELDRIDGE, JJ.

*Omer T. Kaylor, Jr.,* and *Richard W. Lauricella,* with whom were *Kaylor & Spence* on the brief, for appellants.

*Howard W. Gilbert, Jr.,* with whom were *Mackley, Gilbert & France* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The Patterson Agency, Inc., a real estate broker, brought this action against Leo B. Wyand and Viola Wyand, his wife, to recover $8,375.00 allegedly due as a commission on the sale of the Wyands' farm. From a judgment for this amount in favor of Patterson Agency, Inc., the Wyands take this appeal. Since we agree with the Wyands that Patterson Agency was not entitled to a commission, we reverse.[1]

The Wyands, on November 25, 1970, entered into an "Exclusive Sales Listing" agreement for their farm with Patterson Agency. In return for the Agency's trying to sell the farm and advertising it at the Agency's expense, the Wyands agreed to appoint the Agency as their "exclusive agent" for the sale of the farm for 180 days. The Wyands further agreed to pay Patterson Agency a 10% commission if "you procure a buyer, or if the property is sold within said time by . . . [the Wyands] or any other broker . . . ." The "sale price" was stated to be $110,000.00.

On March 31, 1971, within the 180 day exclusive listing period, the Wyands entered into a contract with one Gale H. Lyon for the sale of the property for $85,000.00. Lyon was not obtained by Patterson Agency but was brought to the Wyands by another broker. The contract of sale between the

---

**1.** This is the second time the case has been before us. Initially, summary judgment was entered in favor of the broker. We reversed that judgment on the ground that Maryland Rule 610, setting forth the requirements for a motion for summary judgment, had not been complied with. Wyand v. Patterson Agency, Inc., 266 Md. 456, 295 A. 2d 773 (1972). Upon remand, a trial was held, and thereafter judgment was again entered in favor of the broker.

Wyands and Lyon provided for a $500.00 deposit, for settlement on July 15, 1971, for a forfeiture of the deposit if the purchaser failed to make settlement, and, in the event of forfeiture, for the deposit money to be divided among the Wyands ($1/2$), Patterson Agency ($1/4$) and the broker who found the prospective purchaser ($1/4$). The Patterson Agency was not a party to the contract of sale and did not assent to it.

Settlement pursuant to the contract with Lyon did not take place on or before July 15, 1971, and the deposit was forfeited. In accordance with the contract of sale, the $500.00 deposit was divided among the Wyands, the broker who negotiated the contract of sale and the Patterson Agency. The Patterson Agency accepted the $125.00 tendered to it. Thereafter, the Patterson Agency, claiming that it was entitled to a commission of $8,500.00 because of the contract of sale, brought this action for the $8,375.00 difference.

In these proceedings, the plaintiff Patterson Agency has advanced essentially three different arguments to support its claim for a full real estate broker's commission based upon the contract to sell the property to Lyon, even though the sale to Lyon was never consummated. *First*, in the trial court, Patterson Agency relied on Maryland Code (1973 Repl. Vol.), Art. 21, § 14-105, formerly Code (1957), Art. 2, § 17, which provides *inter alia* that whenever, in the absence of a special agreement to the contrary, a real estate broker employed to sell real estate procures a purchaser, and the person procured is accepted by the employer, and enters a valid, binding and enforceable written contract of sale in terms acceptable to the employer, the broker shall be deemed to have earned his commission even though there is no actual sale. *Second*, the plaintiff also argued in the trial court, as well as before us, that it was entitled to recover under the wording of the exclusive listing agreement. The agreement specified that the Wyands would pay a commission if the property were "sold" by another broker. The plaintiff maintains that the farm was "sold" when the contract of sale was executed. *Third*, Patterson Agency argues that this Court's decisions in *McKeever v.*

*Washington Heights Realty Corp.*, 183 Md. 216, 37 A. 2d 305 (1944), and *Singer Constr. Co. v. Goldsborough*, 147 Md. 628, 128 A. 754 (1925), require a decision in its favor.

In our view none of these arguments is sound. Since the prospective purchaser, Lyon, was not found by Patterson but was procured by another broker, the statute, setting forth the time when a real estate broker's entitlement to a commission accrues, does not apply here. In light of the statute's inapplicability, and the absence of language in the agreement establishing a contrary intent, this Court's decisions require that the word "sold" in a commission agreement with a real estate broker be construed as meaning a consummated sale, not just the execution of a contract for the sale of the property. Neither *McKeever v. Washington Heights Realty Corp., supra,* nor *Singer Constr. Co. v. Goldsborough, supra,* dictate a different result under facts such as we have in this case.

Long ago this Court decided that where one employed a real estate broker under an agreement that the broker would be entitled to a commission if there were a "sale" of the property, or if the property were "sold," or if the broker "procured a purchaser" or similar language, and the agreement did not more specifically set forth when or at what stage in the sale process the right to a commission accrued, a fully consummated sale had to take place before the broker was entitled to a commission. Unless the proof showed that the broker's employer was guilty of fraud or arbitrary or capricious conduct, the mere procurement of a willing buyer, or even the execution of a contract for the sale of the property, was not sufficient. *See Carrington v. Graves,* 121 Md. 567, 572-573, 89 A. 237 (1913); *Riggs v. Turnbull,* 105 Md. 135, 66 A. 13 (1907); *Melvin v. Aldridge,* 81 Md. 650, 658, 32 A. 389 (1895); *Jones v. Adler,* 34 Md. 440, 443 (1871); *Schwartze v. Yearly,* 31 Md. 270, 277 (1869); *Richards v. Jackson,* 31 Md. 250 (1869); *Kimberly v. Henderson and Lupton,* 29 Md. 512 (1868); *Beale v. Creswell,* 3 Md. 196, 201 (1852); *Keener v. Harrod,* 2 Md. 63, 71 (1852).

Thus in *Kimberly v. Henderson and Lupton, supra,* 29 Md. at 512, a property owner and two real estate brokers agreed

that if the brokers "succeeded in negotiating a sale," they would receive the usual commission. The brokers obtained a prospective purchaser who entered into a written contract of sale with the property owner. The contract of sale provided that if either party should fail to comply, a forfeiture of $1,000 should be paid by the defaulting party to the other. Later, the vendee failed to comply and the property owner received the forfeit money. In holding that the brokers were **not** entitled to commissions, Judge Alvey stated (*id.* at 515):

" ... it is manifest that *the sale was not so far effected* as to entitle the appellees to their commissions as brokers. To be entitled, they should have completed the sale .... The undertaking to procure a purchaser requires of the party so undertaking, not simply to name or introduce a person who may be willing to make any sort of contract in reference to the property, but to produce a party capable, *and who ultimately becomes the purchaser.*" (Emphasis supplied.)

In *Richards v. Jackson, supra,* 31 Md. at 250, a property owner employed the broker "to procure a purchaser" for the premises. The broker found one Johnson who entered into a contract of sale for the property. However, Johnson later refused to pay the purchase money and consummate the sale when he was advised by his attorney that the property owner's title was defective. The property owner did not bring an action for specific performance against Johnson. However, he later contracted to sell the property to someone else and obtained a judicial determination that he had good title in a suit for specific performance against the second buyer. The broker, receiving no commission, sought to have the decision in *Kimberly v. Henderson and Lupton, supra,* overruled. In refusing to overrule *Kimberly,* and in holding that the broker was not entitled to a commission, our predecessors reiterated "that a broker, employed to sell real estate, must produce a person who ultimately becomes a purchaser, before he is entitled to his commissions." (*Id.* at 253.) It was also held that the prop-

erty owner's conduct did not constitute such fault as to warrant any different result. (*Ibid.*)

Later, in *Riggs v. Turnbull, supra,* 105 Md. at 135, a home owner promised a broker that he would pay the usual commission if the broker "sold the house for him for $38,000." [2] The broker, already having a prospective purchaser, brought the two parties together. A contract of sale was entered at the price demanded by the owner, and two payments were made to the owner. Subsequently, because the buyer was having some difficulty meeting one of the conditions of the sales contract, the owner, by his attorney, voluntarily agreed to cancel the contract and, apparently, accept a forfeiture of the payments already made. The broker, in suing for his commission, advanced arguments similar to some made by the broker in the present case. Thus, it was argued in *Riggs* that the broker did what he was employed to do, that "he sold the property," that the "contract itself constituted a sale," and that "the equitable title passed to the vendee." (*Id.* at 140-141.) Reliance was placed on cases from the other states, to the effect that a "sale" takes place and the broker is entitled to his commission when a contract of sale is executed. (*Id.* at 141-144.) This Court recognized that generally throughout the United States a "sale" for purposes of a real estate broker's right to a commission is defined as an enforceable contract to sell, and upon the execution of such contract the broker is entitled to his commission. (*Id.* at 148.) Nevertheless, the Court pointedly said: "But this is not the rule prevailing . . . in this State." The Court in *Riggs* went on to reaffirm the earlier Maryland decisions and to hold that the broker was not entitled to a commission, as his right to a commission "depends absolutely upon the carrying of the contract into execution . . . ." (*Id.* at 150.)

Consequently, it was settled early in this State that the word "sold" or similar language in a commission agreement with a real estate broker would be construed to mean a consummated sale and not a contract to sell. This rule of

---

2. Record, No. 21, January Term 1907, p. 13.

construction was changed for *certain situations* by the Legislature just three years after the decision in *Riggs v. Turnbull, supra.* In 1910, the General Assembly enacted what is now codified as Art. 21, § 14-105, which provides:

"Whenever, *in the absence of special agreement to the contrary,* a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, *procures in good faith a purchaser,* seller, lessor or lessee, mortgagor or mortgagee, borrower or lender, as the case may be, *and the person so procured* is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, *whether or not the contract entered into be actually performed,* unless the performance of such contract be prevented, hindered or delayed by any act of the broker." (Emphasis supplied.)

The statute was "designed to settle the question when, in the absence of special agreement, a real estate broker is entitled to commissions." *Snider Bros. v. Heft,* 271 Md. 409, 317 A. 2d 848 (1974); *Ricker v. Abrams,* 263 Md. 509, 517, 283 A. 2d 583 (1971); *Sanders v. Devereux,* 231 Md. 224, 231, 189 A. 2d 604 (1963); *Brown v. Hogan,* 138 Md. 257, 268, 113 A. 756 (1921). While so designed, many disputes between employers and real estate brokers continue to arise because of the statute's inapplicability.[3] Often when the statute is held inapplicable to a fact situation, it is because the parties have entered into a special agreement as to when the broker's right to a commission comes into being. *E.g., W. C.*

---

**3.** There are almost two hundred reported cases in the Maryland Reports involving disputes over real estate brokers' commissions, a majority of which have arisen since 1910.

*Pinkard & Co. v. Castlewood Realty Co.,* 271 Md. 598, 319 A. 2d 123 (1974); *Snider Bros. v. Heft, supra; Prince George's Club v. Carr,* 235 Md. 591, 603, 202 A. 2d 354 (1964); *Chasanow v. Willcox,* 220 Md. 171, 176, 151 A. 2d 748 (1959); *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10 (1959); *Schapiro v. Chapin,* 159 Md. 418, 423-424, 151 A. 44 (1930).

It is urged in this case that the statute does not apply because the parties entered into a special agreement concerning the accrual of the broker's right to a commission. However, we do not think that an agreement to pay a commission "if the property is sold" constitutes a "special agreement to the contrary" within the meaning of § 14-105. If it did, the statute would be rendered almost nugatory. In virtually all cases where a property owner, desiring to sell his property, employs a real estate broker, there is an agreement or understanding that the commission will be paid if the property is "sold" or if there is a "sale" or if a "purchaser" is procured. The question is: at what stage in the process is the property "sold" or is there a "sale" or is there a "purchaser"? It is this very question to which the statute and the previously discussed cases are addressed. A "special agreement to the contrary" was obviously intended to mean something more, namely an agreement specifying when in the sale process (or lease, mortgage, or loan process, as the case may be) the right to a commission accrues. In the present case, there is no such agreement.

Nevertheless, Art. 21, § 14-105, is inapplicable to this case for a different reason. Under the statute, a real estate broker employed to sell property is entitled to his commission upon his employer's signing a contract of sale "whenever" the broker "procures in good faith a purchaser." As this Court has pointed out on several occasions, the statute, by its clear terms, applies only when the broker claiming the commission is the procuring cause of the sale. If some other broker finds the buyer, § 14-105 has no application. *See, e.g., Weinberg v. Desser,* 243 Md. 347, 355, 221 A. 2d 66 (1966); *Sanders v. Devereux, supra,* 231 Md. at 231; *Steele v. Seth,* 211 Md. 323, 328-331, 127 A. 2d 388

(1956); *Buchholz v. Gorsuch,* 144 Md. 62, 64-65, 124 A. 389 (1923). As the appellee Patterson Agency was not the procuring cause of the contract to sell the property to Lyon, the appellee can receive no benefit from the statute.

Since the instant case does not fall within Art. 21, § 14-105, and since the parties did not more explicitly agree as to when the broker's right to a commission should accrue, the rule of construction set forth in the *Riggs, Richards, Kimberly,* and similar cases, is fully applicable. When the parties before us agreed that the broker would be entitled to a commission "if the property is sold," those cases require that the word "sold" be construed as meaning a consummated sale and not a contract for the sale of the property.

Finally, Patterson Agency argues that the Wyands prevented a consummated sale to Lyon by their "own unilateral act" in terminating the contract with Lyon, and that a property owner should not be able in this manner to deprive a broker of his commission. Reliance is placed on this Court's decisions in *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 37 A. 2d 305 (1944), and *Singer Constr. Co. v. Goldsborough,* 147 Md. 628, 128 A. 754 (1925). Neither the *McKeever* case nor the *Singer Constr. Co.* case supports the appellee's position here.

In *McKeever v. Washington Heights Realty Corp., supra,* the property owner gave the plaintiff broker the exclusive right for two years to sell lots in a subdivision; there was no provision in the agreement for another broker to sell any lots during this period; the owner breached the agreement by terminating the plaintiff's right to sell lots prior to the expiration of the two-year period; and the owner refused to consummate sales with buyers procured by the broker during the period. Under these circumstances this Court held that the broker was entitled to injunctive relief and to commissions with respect to those buyers it had already procured. In *Singer Constr. Co. v. Goldsborough, supra,* the property owner gave the broker an exclusive right for twenty-four hours to "present" to the property owner a buyer for certain lots improved with houses (147 Md. at

633-634). When the broker complied with the contract and procured a buyer within twenty-four hours, the owner further agreed that, "I will close the deal with him." The owner asked the broker and buyer to come to the owner's office the next day. (*Id.* at 635.) When the buyer and broker came the next day, the property owner refused to sign a sales contract, saying that he "gave an option on these houses last night." (*Ibid.*) In light of these facts, this Court held that the broker performed according to his agreement with the owner and that the owner had breached the terms of the agreement (*Id.* at 637-638). In this context, the Court stated that the broker could not be deprived of his commission on the ground "that the sale had fallen through by the unwarranted refusal of the principal to enter into a contract to carry out the authorized sale according to its prescribed terms." (*Id.* at 638.)

In both *McKeever* and *Singer Constr. Co.*, the owners' unwarranted and unilateral refusals to consummate sales, constituted violations of the terms of their agreements with the brokers. Of course, nothing in the cases or statutory provisions setting forth rules of construction as to when a real estate broker's commission accrues in the absence of special agreement, authorizes a property owner to breach the terms of his agreement with the broker. In the present case, however, there was no breach of the terms of the contract with the Patterson Agency. The contract expressly provided for the contingency of a sale negotiated by another broker, with the question being one of interpretation, namely whether a sale took place during the exclusive listing period. Other than the dispute over the meaning of the word "sold," there is no basis for a contention that the Wyands breached any terms of the contract with the Patterson Agency. It is settled by the opinions in *Riggs v. Turnbull, supra,* 105 Md. at 150; *Richards v. Jackson, supra,* 31 Md. at 253; and *Kimberly v. Henderson and Lupton, supra,* that if the vendor accepts a forfeiture of the vendee's deposit instead of bringing an action against the vendee for specific performance, he does not thereby breach his duty to the broker.

As the Wyands' property was not "sold" during the exclusive listing period, the terms of the contract between the parties did not entitle the appellee Patterson Agency to a commission.

*Judgment reversed.*

*Appellee to pay costs.*