JOHN C. CHILDS, SR. ET AL. *v.* FRANK P. RAGONESE
ET AL.

[No. 953, September Term, 1981.]

*Decided April 12, 1982.*

The cause was argued before MASON, █COUCH and BISHOP, JJ.

*Neil Tabor* for appellants.

*Nathan Patz,* with whom was *Alan A. Abramowitz* on the brief, for appellees.

BISHOP, J., delivered the opinion of the Court.

The appellants, John C. Childs, Sr. and Paradise Joint Venture (Childs) sued the appellee, A. J. Billig & Company, Auctioneers (Billig) for the recovery of a commission which

Billig deducted from a deposit paid to Billig by a third party purchaser at a public auction. The trial court ruled in favor of Billig. On appeal Childs asks, *inter alia,* whether an auctioneer is entitled to a commission when the listing contract states that the commission is earned if the auctioned property is "sold", a sales contract is signed by a bidder, but the successful bidder defaults on the sales contract."

For the reasons set forth in this opinion we affirmatively answer the appellants' question and hold that Billig is entitled to its commission.

## *The Facts*

Childs owned a 163.85 acre parcel of land situated in Harford County. Desiring to sell this land, Childs entered into an auctioneer's contract with Billig. This contract stated in pertinent part:

"We hereby employ A. J. BILLIG & COMPANY, duly licensed Auctioneers, as Our exclusive Agents to sell either by public or private sale Our property as above described. This exclusive employment is to continue for a period of 30 days. If the said property is sold during the life of this contract by the said Auctioneers or by the Owners, or through any other agency or broker, or if the owner during the life of this contract should withdraw the property prior to its offering, the said owners, in consideration of the acceptance of such employment by said Auctioneers, hereby agree to pay said Auctioneers a commission on the amount for which the property is sold, or, if said property be withdrawn from sale, a commission on the above price [$246,000.00] for said property, according to the rates printed on the reverse side hereof, plus all advertising costs not to exceed the sum of $1500.00, which advertising costs shall also be paid by the owners. In the event the property is offered at public auction and is not sold

because of an inadequacy of bid or bids, owner<u>s</u> shall pay to the Auctioneers for such public auction offering a fee of <u>$750.00</u>, plus such advertising costs. Executed at Baltimore, Md. on <u>11/8</u> 19<u>77</u>."

The contract provided for a commission rate of 5 percent.

A public auction was held on November 30, 1977. The higher bidder was Parkview Construction Company (Parkview) which bid $245,775.00. At the close of bidding, a sales contract was signed by Childs and Parkview and a $20,000.00 check, payable to the order of Frank P. Ragonese (Ragonese), Parkview's principal stockholder, and endorsed by Ragonese to Billig, was paid as a deposit on the purchase price. By the sales contract the parties acknowledged that Parkview "purchased" the property and paid a deposit, with the balance of the purchase money to be paid in 60 days. The sales contract also provided that "all rents, taxes and expenses [were] to be adjusted to date of sale."

Billig deducted from the $20,000.00 deposit the sum of $802.38 for advertising expenses and $12,228.75 as a commission equal to 5 percent of the sales contract price of $245,775.00, and remitted to Childs a check for $6,908.87.

By a letter dated February 9, 1978, attorney, Neil Tabor, notified Billig that he represented Childs, "the Seller of an 163.85 acre parcel . . . which was sold at auction by your firm on November 30, 1977." Mr. Tabor informed Billig of the failure of Parkview to make settlement and requested that Billig remit the $12,288.75 of the $20,000.00 paid by Parkview "as a deposit at the time of sale." Billig responded by a letter dated February 10, 1978 that the "custom and usage in the auction profession," and under the listing contract, did not require an auctioneer to return its commission in the event of a purchaser's default.

In subsequent litigation against Ragonese, Parkview, and Billig, a settlement was reached between Childs, Ragonese and Parkview. After a hearing on the claim against Billig, the Superior Court of Baltimore City, by an order dated June 29, 1981, entered judgment for Billig.

*Auctioneer's Commission*

The trial court based its ruling on a finding that "Billig, although an auctioneer, comes within the purview" of Md. Real Property Code § 14-105. This statute provides that real estate brokers are entitled to their commissions when a sales contract is executed between the owner and prospective buyer procured by the broker. The trial court found that the appellee came "within the purview of the statute" and that the appellee was entitled to his commission "upon the full and complete execution" of the contract of sale.

The appellants contend that the trial court's ruling that the appellee was covered by Md. Real Property Code § 14-105 was erroneous and the ruling itself must be vacated. We agree that the lower court was in error in its reasoning, however, we hold that the court did not err in ruling for Billig, and we affirm that ruling, modifying only its rationale. *Freestate Land Corporation v. Bostetter,* 292 Md. 570, 440 A.2d 380 (1982).

Although the appellee held the license of a real estate broker, he acted only in the capacity of an auctioneer, and auctioneers are explicitly excepted from the Code's only definition of the term "real estate broker." Maryland Code Ann., Art. 56, § 212 (f) (8).

The appellants strongly rely on *Wyland v. Patterson Agency, Inc.,* 271 Md. 617, 319 A.2d 308 (1974). In *Wyland* the Court of Appeals held that if § 14-105 did not apply under the facts of the case, then a broker was not entitled to receive a commission when a sales contract was executed, but only when the contract was consummated, *id.* at 625. The Court of Appeals based its decision on the extensive body of law concerning real estate brokers which developed prior to the statutory change.

Because Billig's reliance on the law applying to real estate brokers is not apposite, we find that the analysis of the present case must be based on the law concerning auctioneers, and on the interpretation of the auction listing contract between the parties. As recited above, this listing

contract had a 30 day duration, during which time Billig was obligated to conduct an auction. If, at the auction, inadequate bids were received, the property would be deemed "not sold" and Billig would be entitled to a fee of $750.00 plus costs. If the owner withdrew the land from sale, Billig would be entitled to 5 percent of the agreed price of $246,000.00. If the land was "sold during the life of this contract," then Billig would have earned 5 percent of that sales price. In this case, a successful auction by Billig resulted in a binding sales contract between Parkview and Childs, during the 30 day "life" of the listing contract. Based on our examination of the law concerning auctioneers, we are convinced that by the execution of the sales contract by the buyer and its acceptance by the seller, Billig earned the $12,228.75 commission.

Case law directly supporting our conclusion is sparse. With no Maryland authority on point, the appellee's argument rests primarily on distinguishing the law affecting real estate brokers from that concerning auctioneers. The appellee also relies on the uncontroverted claim that "custom and usage" within the profession entitle auctioneers to commission at the time of the execution of a sales contract. *See Archway Motors, Inc. v. Herman,* 37 Md. App. 674, 378 A.2d 720 (1977), in which Billig previously relied on its standard listing contract. *See also Small v. Ciao Stables, Inc.,* 289 Md. 554, 555-556, 425 A.2d 1030 (1981), in which an auctioneer's commission was a percentage of the accepted bid.

In the law concerning auctioneers, customs must be considered in determining the effect of a transaction. *Corbin on Contracts* § 108.

An auctioneer is customarily entitled to commissions if he is the procuring cause of a sale, even if, without his fault, the contract of sale is rescinded or abandoned. *Linkous v. Harris,* 134 Va. 63, 113 S.E. 831, 834-835 (1922), cited in 7A C.J.S. *Auctions & Auctioneers* § 22b. This general rule has been applied to permit auctioneers to obtain commissions after the auction when the vendor was unable to convey title. *Shopen v. Bone,* 328 F.2d 655 (8th Cir. 1964). In *Shopen,*

*supra* at 659, Circuit Judge Mehaffy concluded that it would be "grossly incongruous" for the receipt of the commission to be made dependent on the closing of the sales contract merely because the auctioneer was given the authority to close the sale.

The appellants refer us to the North Carolina Supreme Court decision of *Horney v. Mills,* 189 N.C. 724, 128 S.E. 324 (1925) as supporting their proposition that commissions do not accrue until a sale is effected or until a bid is fully complied with. From the text of *Horney v. Mills,* 128 S.E. at 326, appellants quote:

> "The primary purpose of the contract . . . is the sale of land by the plaintiff for defendant, and compensation by the defendant to the plaintiff for the full and final performance of the contract. Commissions are due and payable only at the close of sale. It appears from the complaint that no sale was made, and therefore, no commissions were due by defendant to plaintiff."

Although this reference appears to the appellants to support their case, an examination of the complete text of Associate Justice Connor's opinion reveals that "the contract" being discussed in the quotation was not the contract of sale between the buyer and seller of land, but was the listing contract between the auctioneer and the land owner. In *Horney v. Mills, supra* at 326, no commission was earned by the auctioneer because he "failed to get purchasers and bidders" for the land owner at the agreed minimum price.

The appellants also cite a more recent ruling of an Illinois appellate court which ordered an auctioneer to return a withheld commission obtained at a real estate auction. In *Bank of Silvis v. Boultinghouse Auction Co.,* 71 Ill. App. 3d 98, 389 N.E.2d 267 (1979) the listing contract drafted by the auctioneer explicitly provided that the auctioneer would receive a commission of 3 percent of total proceeds, "said commission to be paid from the first proceeds of the sale." *Id,* 389 N.E.2d at 268. The trial court in *Boultinghouse*

determined that the auctioneer earned 3 percent of the bid price, despite the purchaser's default; however, the appellate court reversed, ruling that by the terms of the contract, the auctioneer had limited itself to earning 3 percent of the proceeds "actually received in hand," to wit: the down payment paid at the auction. *See DeFranceaux Realty Corp. v. Leeth,* 283 Md. 611, 618, 391 A.2d 1209 (1978) in which a similar "proceeds" clause was held to make settlement a condition precedent to payment of a broker's commission. As the appellee correctly asserts in its brief, these decisions are distinguishable from the present case where the auctioneer did not limit the source of its commission to the proceeds of the sale.

In the absence of restrictive terms in the auctioneer's listing contract, the commission is earned, not by a consummated sales contract, but by the auctioneer's procurement of a bona fide bid acceptable to the owner. *Rountree v. Todd,* 210 Ga. 226, 229, 78 S.E.2d 499 (1953); *Roberts v. Todd,* 120 Ga. App. 444, 170 S.E.2d 862 (1969). This conclusion is especially compelled when the accepted bid results in the making of an executory binding contract by which the realty is to be sold to a purchaser obtained by the auctioneer. *See Leonard v. Fallas,* 335 P.2d 665, 668 (Calif. 1959).

We hold the lower court's conclusion that the appellants failed to produce sufficient evidence that Billig breached its fiduciary duty to the appellants was not clearly erroneous. Md. Rule. 1086.

For the above-stated reasons we affirm the judgment of the lower court.

*Judgment affirmed; costs to be paid by the appellants.*